# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  SS GROUP USA, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.: CIV-23-987-SLP |
| 1.  DONALD ARBUCKLE, and<br>2.  SS UTILITY GROUP, LLC, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE, AND OTHER RELIEF

For its Complaint against Donald Arbuckle ("Arbuckle") and SS Utility Group, LLC ("SS Utility") (collectively "Defendants"), Plaintiff SS Group USA, LLC ("SS Group") alleges and states as follows:

## PRELIMINARY STATEMENT

1. This action arises out of Defendants' wrongful use and retention of intellectual and physical property belonging to Arbuckle's former employer, SS Group.

2. Among other things, Defendants have stolen and are improperly using SS Group's name and marks as part of an improper attempt to confuse customers, divert sales, and trade off of SS Group's goodwill.

3. Defendants have also engaged in a variety of other unfair, deceptive, and tortious acts, as set forth further below.

4. Defendants wrongful conduct has, and will continue to, deceive consumers and cause irreparable harm to SS Group if this Court does not enjoin Defendants' continuing wrongful conduct.

5. SS Group thus seeks injunctive and monetary relief.

## PARTIES

6. SS Group is a Delaware limited liability company providing utility equipment and supplies in several states, including Oklahoma.

7. SS Utility Group is an Oklahoma limited liability company. SS Utility Group's business address, as listed with the Oklahoma Secretary of State, is 13337 Northeast 150th Street, Jones, Ok, 73049.

8. On information and belief, Arbuckle is an individual residing and domiciled in Oklahoma.

## JURISDICTION AND VENUE

9. Because this matter arises under the Lanham Act, the Court has subject matter jurisdiction over SS Group's trademark claims pursuant to 28 U.S.C. § 1338(a).

10. The Court has supplemental jurisdiction over SS Group's other claims under 28 U.S.C. § 1367 because they arise from the same series of operative facts and are part of the same case or controversy.

11. This Court has personal jurisdiction over Defendants because they are domiciled in Oklahoma. This Court also has personal jurisdiction over Defendants with respect to the claims here because Defendants improper conduct took place in Oklahoma and Defendants continue to wrongfully use SS Group's intellectual property in Oklahoma.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because both Defendants reside in Oklahoma and one or more of the Defendants reside in this district.

## SS GROUP'S HISTORY, BUSINESS, AND INTELLECTUAL PROPERTY

13. SS Group was initially founded and formed in Arizona on or around July 13,

2021, by its founders Scott Pinckney and Shane Weatherby.

14.     The "SS" in SS Group was derived from the first names of its founders, Scott and Shane.

15.     SS Group is in the utility supply business, furnishing trucks, materials, services, and other supplies for use in connection with maintenance, construction, storm, and related utility projects.

16.     SS Group formed and operates several subsidiary entities, including SS Group Storm, LLC, SS Group Utility Products, LLC, SS Group Manufacturing and Service, LLC, and SS Group Equipment Sales and Rental, LLC.

17.     No later than October 2021, SS Group developed the following mark for use in connection with the promotion, advertisement, and sale of its goods and services:



18.     Thereafter, SS Group began using the names SS Group and SS Group USA in commerce, and has continued to use these names in commerce, including in Oklahoma, since that time.

19.     Among other variations, SS Group has and continues to use the following mark in connection with the promotion, advertisement, and sale of its goods and services:



20. The names SS Group and SS Group USA, as well as the associated marks are collectively referred to herein as the "SS Group Marks."

21. As a result of SS Group's continuous and widespread use of the SS Group Marks in connection with SS Group's goods and services, SS Group owns valid and subsisting federal statutory and common law right to the SS Group Marks.

22. SS Group's Marks are inherently distinctive as they do not describe or suggest the characteristics of SS Group's goods or services.

23. SS Group has, and continues to, advertise and sell its goods and services under the SS Group Marks, including in Oklahoma.

**SS GROUP HIRES ARBUCKLE**

24. On or around March 1, 2023, SS Group hired Arbuckle as a Vice President of SS Group.

25. The terms of Arbuckle's employment were documented in a written agreement (the "Employment Contract") between the parties.

26. Pursuant to the Employment Contract, and among other things, Arbuckle agreed that he would "not, directly or indirectly, engage or participate in any other business activities that [SS Group], in its reasonable discretion, determines, to be in conflict with the best interests of [SS Group] without the written consent of the [SS Group], which consent will

not be unreasonably withheld."

27. Arbuckle also agreed that any Confidential Information belonged exclusively to SS Group.

28. Confidential Information included, among other things, "interest in know-how, copyright, trade-marks or tradenames . . . ."

## SS GROUP DEVELOPS THE SS UTILITY GROUP MARK

29. During the course of Arbuckle's employment, SS Group determined that it may be beneficial to use variations of the SS Group name and/or marks, including SS Utility Group or SS Utility Group USA, to promote and advertise its goods and services.

30. To facilitate the use of the name SS Utility Group USA in connection with the promotion and sale of SS Group's goods and services, SS Group utilized SS Group resources to develop and promote the SS Utility Group name and associated mark during the course of Arbuckle's employment.

31. For example, on or around March 3, 2023, Stacy Weatherby, an employee of SS Group, developed the following SS Utility Group logo, on behalf of SS Group (the "SS Utility Group Mark"). The SS Group Marks and the SS Utility Group Mark are collectively referred to herein as the SS Group IP.



32. Thereafter, SS Group began using the SS Utility Group Mark in commerce in connection with the promotion and sale of SS Group's goods and services.

33. For example, SS Group developed and utilized company resources to create, SS Utility Group branded business cards, hats, and shirts, along with other advertisements and promotions. Several examples of SS Group's use and development of the SS Utility Group Mark during the term of Arbuckle's employment are set forth below:





34.     As a result of SS Group's use of the SS Utility Group Mark in connection with SS Group's goods and services, SS Group owns valid and subsisting federal statutory and common law rights to the SS Utility Group Mark.

**ARBUCKLE'S DEPARTURE AND WRONGFUL USE OF SS GROUP'S IP**

35.     On June 23, 2023, the parties mutually agreed to end Arbuckle's employment with SS Group.

36.     The terms of Arbuckle's separation from SS Group are documented in a written agreement between the parties (the "Separation Agreement").

37.     Pursuant to the Separation Agreement, Arbuckle agreed to, among other things, "strictly adhere to [his] obligations with respect to the return of [SS Group's] property and with respect to Confidential Information (as that term is defined in the Employment Contract)."

38.     Arbuckle further agreed that a violation of this provision would result in "immediate, irreparable damage and harm" to SS Group, and that SS Group would thus be "entitled to obtain immediate, temporary, preliminary and permanent injunctive relief to

7

prevent the breach," and that SS Group would be entitled to "recover its reasonable attorneys' fees and costs incurred seeking to or obtaining any remedy for [Arbuckle's] breach."

39. Despite the foregoing, following his separation from SS Group, Defendants wrongfully used and continue to wrongfully use SS Group's IP.

40. Specifically, Defendants operate a competing utility supply and services company doing business as "SS Utility Group" or "SS Utility Group USA" that utilizes a mark virtually identical to the SS Utility Group Mark and confusingly similar to the SS Group Marks owned by SS Group (the "Infringing Mark").

41. Unbeknownst to SS Group, during his employment with SS Group, Arbuckle had caused SS Utility Group, LLC to be formed solely under his name. On information and belief, this was done to facilitate Defendants wrongful theft of SS Group's IP and use of the Infringing Mark.

42. Defendants use the Infringing Mark within the substantially the same geographic area in which SS Group does business.

43. The similarities between SS Group's Mark and the Infringing Mark are readily apparent from even a cursory evaluation of the marks, as shown below:

**SS Group Mark**



8

**SS Utility Group Mark**



**Infringing Mark**



44.     On information and belief, and in light of their similarity, Defendants simply copied, with little alteration, the SS Utility Group Mark developed by SS Group.

45.     Defendants market and sell their goods and/or services under the Infringing Mark, including in Oklahoma.

46.     Defendants' improper use of SS Group's IP has caused and is likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' goods and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods and services originate from, are associated or affiliated with, or otherwise authorized by SS Group.

47.     Defendants' improper use of SS Group's IP has already caused actual

confusion. For example, certain of SS Group's customers have expressed confusion regarding whether Defendants' business is part of SS Group, with one even indicating they purchased equipment from Defendants believing SS Utility Group was part of SS Group.

48. As another example, on July 24, 2023, SS Group received an inquiry from a customer directed to SS Group's ssgrpusa.com e-mail address. Despite having ended his employment with SS Group, Arbuckle improperly accessed his SS Group email address, responded to the inquiry, and re-directed the customer's communications to Defendants.

49. Upon information and belief, Defendants have represented or implied to others that Defendants, or Defendants' goods and services, are associated or affiliated with SS Group, or SS Group's goods and services.

50. Upon information and belief, and in light of the foregoing, Defendants have improperly profited from the confusion caused by their wrongful conduct by diverting customers and sales away from SS Group to Defendants, and have improperly traded upon and usurped the goodwill developed by SS Group.

51. Upon information and belief, Defendants acts described above were undertaken willfully and with the deliberate intent to trade on the goodwill of SS Group and SS Group's IP, cause confusion in the marketplace, and divert potential sales of SS Group's sales to Defendant.

52. SS Group is informed and believes, that Arbuckle's wrongful conduct here is consistent with a course of conduct that Arbuckle has exhibited previously.

53. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to SS Group and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

54. As just one example, SS Utility Group advertises on its website a 4.9 rating on Google and an A+ BBB rating, with 2,394 alleged google reviews and 125 alleged BBB review.



55. On information and belief, this representation is false. This belief is based on, among other things, that a google search of SS Utility Group does not result in *any* google reviews, let alone 2,394 reviews with an average rating of 4.9.

56. Similarly, a search of the Better Business Bureau's website reveals no results for SS Utility Group.



57. Among other things, being associated with such false and misleading advertisements has and will continue to harm SS Group's goodwill, reputation, and

commercial standing.

58. SS Group has requested that Defendants' cease their improper use of SS Group's IP on several occasions.

59. Most recently, counsel for SS Group sent Defendants a cease and desist letter requesting that Defendants halt their continuing wrongful conduct. Defendants refused.

**DEFENDANT'S IMPROPER RETENTOIN OF SS GROUP'S PROPERTY**

60. Following his separation from SS Group, and despite Arbuckle's contractual agreement to return SS Group's property, Defendants have wrongfully retained property belonging to SS Group.

61. For example, in connection with his previous employment with SS Group, Arbuckle came into possession of a 2011 Dodge 5500 (a commercial bucket truck regularly used in the utility service industry) that belongs to SS Group.

62. Following his separation from SS Group, Ms. Arbuckle wrongfully retained the 2011 Dodge 5500 despite requests from SS Group for its return.

63. In August 2023, Arbuckle represented that he had a buyer for the 2011 Dodge 5500 and would remit SS Group's proceeds from the sale to SS Group.

64. To date, however, Arbuckle has failed to remit the proceeds from the sale or return the 2011 Dodge 5500.

65. Arbuckle has also wrongfully retained possession of other SS Group property, including two additional 2011 Dodge 5550 bucket trucks, a 2011 IHC Altec DM47 and a 2006 Freightliner Altec (both are types of utility boom truck), and one or more pole trailers.

66. In light of the foregoing allegations, SS Group is informed and believes that Defendants have wrongfully retained and used other physical or intellectual property belonging

to SS Group.

## COUNT I
### (Breach of Contract - Arbuckle)

67. SS Group incorporates the prior allegations of its Complaint as is fully set forth herein.

68. The Employment Contract and Separation Agreement are valid and binding contracts between SS Group and Arbuckle.

69. Through the conduct described above, Arbuckle has breached the terms of the Employment Contract and Separation Agreement.

70. As a direct and proximate result of Arbuckle's breach, SS Group has been damaged in an amount to be proven at trial.

71. SS Group is entitled to preliminary and permanent injunctive relief, as well as the recovery of its attorneys' fees and costs, as a result of Arbuckle's breach pursuant to the terms of the Separation Agreement.

## COUNT II
### (Interference With Business Relations - Defendants)

72. SS Group incorporates the prior allegations of its Complaint as is fully set forth herein.

73. Prior to Arbuckle's departure from SS Group, SS Group had an existing business relationship with several of its customers.

74. Due to Arbuckle's previous employment with SS Group, Defendants knew of these business relationships.

75. Through the conduct described above, Defendants interfered with SS Group's business relationships, including by causing SS Group's customers not to enter into further

contracts with SS Group and/or causing potential customers to believe they were contracting with SS Group when they were in fact contracting with Defendants.

76. Defendants' conduct was intentional.

77. Defendants used improper and/or unfair means, including the use of SS Group's IP and, upon information and belief, SS Group's other confidential information.

78. As a direct and proximate result of the foregoing, SS Group has been damaged in an amount to be proved at trial.

## COUNT III
### (Violation of the Lanham Act – Defendants)

79. SS Group incorporates the prior allegations of its Complaint as is fully set forth herein.

80. Defendants' unauthorized use in commerce of the Infringing Mark as alleged above is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by SS Group, or that Defendant is in some way affiliated with or sponsored by SS Group.

81. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with SS Group.

82. Defendants' conducts, as described herein, constitutes unfair competition in violation of Section 43(a) of the Lanham Act.

83. Defendants' conduct is causing immediate and irreparable harm and injury to SS Group, and to its goodwill and reputation, and will continue to damage SS Group and confuse the public unless enjoined by the Court, and thus SS Group has no adequate

remedy at law.

84. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, together with prejudgment and post-judgment interest at the maximum rate permitted by law.

## COUNT IV
**(Violation of the Oklahoma Deceptive Trade Practices Act – Defendants)**

85. SS Group incorporates the prior allegations of its Complaint as is fully set forth herein.

86. SS Group is a person as that term is defined in the Oklahoma Deceptive Trade Practices Act ("ODTPA").

87. Through the conduct described above, Defendants have engaged in several deceptive practices as described in Section 53 of the ODTPA.

88. As a direct and proximate result of Defendants' unfair practices, SS Group has been damaged in an amount to be proven at trial.

89. SS Group is entitled to a preliminary and permanent injunction enjoining Defendants' deceptive practices, in additional to damages and attorneys' fees, pursuant to Section 54 of the ODTPA.

## COUNT V
**(Conversion – Defendants)**

90. SS Group incorporates the prior allegations of its Complaint as is fully set forth herein.

91. SS Group is the lawful owner of property described in paragraph 60-66 of the Complaint.

92. Defendants have wrongfully retained possession of the foregoing property despite SS Group's request for the return of the same.

93. SS Group has been harmed as a result of Defendants' conversion in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, SS Group requests relief as follows:

A. For a preliminary and permanent injunction restraining Defendants from using SS Group's IP, including advertising, displaying, or promoting any product or service using the SS Group or SS Utility Groups Marks, or any designation confusingly similar thereto, and prohibiting Defendants from holding out in any manner whatsoever, that Defendants, or their products or services, are in any way sponsored by, or associated or affiliated with Plaintiffs, or Plaintiffs' product or services.

B. That Defendants be required to deliver to SS Group for destruction and products or other materials of any nature bearing or derived from SS Group's IP or any designation confusing similar thereto.

C. That Defendants be required to make a detailed accounting to SS Group with respect to all transactions undertaken under the Infringing Mark, or any confusingly similar designation, including: (1) Defendants gross revenues relating to such products; and (2) Defendants total profits generated, including a detailed explanation of any alleged deductions to be made in the calculation of profits.

D. That Defendants be directed to account for and return any property belonging

to SS Group, including the property described above.

E. That Defendants be directed to pay over to SS Group all gains, profits, and advantages realized by Defendants from the sales of products bearing SS Group's marks, or any designation confusingly similar thereto.

F. Direct, consequential, incidental, and punitive damages in an amount to be proven at trial.

G. The recovery of SS Group's attorney's fees and costs incurred in connection with this matter.

H. Pre- and Post-judgment interest at the maximum rate permitted by law.

I. Such other and further relief that the Court may deem just and proper.

Respectfully Submitted

By: /s/ *Denelda L. Richardson*
DENELDA L. RICHARDSON, OBA 20103
drichardson@rhodesokla.com
COLIN H. TUCKER, OBA 16325
chtucker@rhodesokla.com
Rhodes, Hieronymus, Jones, Tucker & Gable
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173; (918) 592-3390 [fax]

-And-

GREGORY T. SAETRUM
*Pending pro hac vice admission*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Rd., Suite 700
Phoenix, Arizona 85015
(602) 528-4881; (602) 253-8129 [fax]

*Attorneys for Plaintiff*